RUTH LARSON HATCHER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hatcher v. Commissioner
Docket No. 1298-76.
United States Tax Court
T.C. Memo 1978-59; 1978 Tax Ct. Memo LEXIS 459; 37 T.C.M. (CCH) 304; T.C.M. (RIA) 780059; February 14, 1978, Filed *459 P is a member of the Wider Quaker Fellowship and/or the Religious Society of Friends. Neither of these religious sects has ordained, commissioned, or licensed ministers, nor any teaching or tenet which would require its adherents to be conscientiously opposed to accepting benefits under the social security system. Such religions leave to each individual the decision as to whether to participate in such a retirement system, and the petitioner has concluded that she is conscientiously opposed to such participation. Held, P is liable for the tax imposed on self-employment income. Secs. 1401 and 1402, I.R.C. 1954, do not abridge the free exercise of P's religion; nor is the exemption provided by sec. 1402(e) or (h) unconstitutionally narrow. Ruth Larson Hatcher, pro se. Thomas M. Ingoldsby and Richard D. D'Estrada, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined a deficiency in the petitioner's Federal income tax for 1974 in the amount of $568.40.The Commissioner has conceded some of the deficiency; the only issue for decision is whether the petitioner is relieved from liability for the tax on self-employment income under the provisions *461 of sections 1401 and 1402 of the Internal Revenue Code of 1954[1] because she is religiously opposed to public retirement systems. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioner, Ruth Larson Hatcher, resided at Taos, N. Mex., at the time she filed her petition in this case. She timely filed her individual Federal income tax return for 1974 with the Internal Revenue Service Center in Austin, Tex. The petitioner has been a member of either the Wider Quaker Fellowship (Quakers) or the Religious Society of Friends (Friends) since May 26, 1943. Neither religion has ordained, commissioned, or licensed ministers; rather, each member is considered to be a potential minister ordained only by God. Such religions have no practice of making provisions for their dependent members. Neither of these religions has an established tenet or teaching that its adherents must be conscientiously opposed to the acceptance of the benefit of any private or public insurance payments in the event of death, disability, old age, or *462 retirement, or payments toward the cost of, or to provide services for, medical care, including benefits of any insurance system established by the Social Security Act. Decisions regarding the moral propriety of accepting benefits under public or private insurance programs are left to the individual conscience of each member. Based on her religious convictions, the petitioner is conscientiously opposed to participating in the social security system. From 1951 through 1973, the petitioner earned self-employment income but according to her understanding, her income was insufficient to require her to file returns for those years. During 1974, she earned $2,413 of self-employment income within the meaning of section 1402(b) as the director of a children's art center and as a bookkeeper. Both of these jobs were unrelated to activities conducted by the Friends or Quakers. On or about November 25, 1975, the petitioner filed Form 4029, which is an "application for exemption from tax on self-employment income and waiver of benefits," with the Internal Revenue Service Center in Austin, Tex. On the form, the applicant is supposed to certify that she is a member of a religious group and *463 adheres to the established tenets or teachings of such group by reason of which she is conscientiously opposed to "acceptance of the benefits of any private or public insurance which makes payments in the event of death, disability, old age, or retirement or makes payments toward the cost of, or provides services for, medical care (including the benefits of any insurance system established by the Social Security Act)." When the petitioner filed Form 4029, she altered it by crossing out the language quoted above, and inserted in place thereof, that as a member of the Quakers or Friends, she was conscientiously opposed to "paying Social Security as an individual Friend." As of January 10, 1977, the petitioner had not filed with the Internal Revenue Service Form 4361, which is an "application for exemption from self-employment tax for use by ministers, members of religious orders and Christian Science practitioners." On December 1, 1975, the Commissioner issued a notice of deficiency for 1974 determining that the petitioner was liable for self-employment tax for that year. OPINION As a part of the social security system, section 1401 imposes a tax on those individuals who receive *464 self-employment income as defined in section 1402(b). However, section 1402(e) exempts certain ministers from the payment of such tax, and section 1402(h) relieves the members of certain religious faiths from the payment of such tax. The petitioner, after careful deliberation, has concluded that, as a Quaker or Friend, she is conscientiously opposed to participating in any public retirement system, and she fervently argues that, as a constitutional right, she should be free to observe such religious belief.She also urges us to interpret section 1402(e) or (h) so as to include her within one of those exemptions. In Braunfeld v. Brown, 366 U.S. 599, 606 (1961), the Supreme Court declared: To strike down, without the most critical scrutiny, legislation which imposes only an indirect burden on the exercise of religion, i.e., legislation which does not make unlawful the religious practice itself, would radically restrict the operating latitude of the legislature. Statutes which tax income and limit the amount which may be deducted for religious contributions impose an indirect economic burden on the observance of the religion of the citizen whose religion requires *465 him to donate a greater amount to his church; * * * The list of legislation of this nature is nearly limitless. In Henson v. Commissioner, 66 T.C. 835 (1976), and in Palmer v. Commissioner, 52 T.C. 310 (1969), this Court examined the same issues raised by the petitioner in this case. The Court recognized that it is appropriate for Congress to be concerned about the welfare of the citizens of this country, that in pursuance of such concern, it is proper for Congress to establish public retirement programs for virtually all of the citizens, and that it is a legitimate exercise of the legislative power to make participation therein mandatory. Though such participation may infringe on the religious beliefs of some of the citizens, we concluded that Congress, in pursuance of the general welfare, can decide that even such citizens must participate; otherwise, these citizens may not adequately provide for their own retirement and thereby become a public burden in the future. On the other hand, we also recognized that Congress has broad discretion in determining who must participate and who may be exempted from participation. We concluded that Congress *466 did not abuse its legislative power by exempting those persons described in section 1402(e) or (h). While this Court appreciates the sincerity of the petitioner's beliefs, there is no reason to alter the conclusions reached in those decisions. Throughout our history, we have been continuously attempting to work out the most satisfactory form of government. In doing so, we seek to achieve the maximum freedom for the individual, but at times, that freedom must be curtailed in order to maintain an orderly and harmonious society. We are constantly attempting to strike the proper balance between those objectives. As a court, we can set aside an act of the legislature only when we find that Congress has acted arbitrarily. Though the petitioner may make sufficient arrangements for her retirement and may not ever call upon society for assistance, we cannot say that Congress was unreasonable and arbitrary in concluding that retirement arrangements should not be left to the planning of each individual. History has shown that when left to their own resources, many citizens fail to make adequate arrangements. Section 1402(e)(1) provides in relevant part: (e) Ministers, Members of *467 Religious Orders, and Christian Science Practitioners. -- (1) Exemption. -- Any individual who is (A) a duly ordained, commissioned, or licensed minister of a church or a member of a religious order * * * upon filing an application (in such form and manner, and with such official, as may be prescribed by regulations made under this chapter) together with a statement that either he is conscientiously opposed to, or because of religious principles he is opposed to, the acceptance (with respect to services performed by him as such minister * * *) of any public insurance which makes payments in the event of death, disability, old age, or retirement * * * shall receive an exemption from the tax imposed by this chapter with respect to services perrormed by him as such minister * * * In relevant part, section 1402(h) provides: (h) Members of Certain Religious Faiths. -- (1) Exemption. -- Any individual may file an application (in such form and manner, and with such official, as may be prescribed by regulations under this chapter) for an exemption from the tax imposed by this chapter if he is a member of a recognized religious sect or division thereof and is an adherent of established *468 tenets or teachings of such sect or division by reason of which he is conscientiously opposed to acceptance of the benefits of any private or public insurance which makes payments in the event of death, disability, old age, or retirement * * * Such exemption may be granted only if the application contains or is accompanied by-- (A) such evidence of such individual's membership in, and adherence to the tenets or teachings of, the sect or division thereof as the Secretary or his delegate may require for purposes of determining such individual's compliance with the preceding sentence, and (B) his waiver of all benefits and other payments under titles II and XVIII of the Social Security Act on the basis of his wages and self-employment income as well as all such benefits and other payments to him on the basis of the wages and self-employment income of any other person, and only if the Secretary of Health, Education, and Welfare finds that-- (C) such sect or division thereof has the established tenets or teachings referred to in the preceding sentence, (D) it is the practice, and has been for a period of time which he deems to be substantial, for members of such sect or division *469 thereof to make provision for their dependent members which in his judgment is reasonable in view of their general level of living, and (E) such sect or division thereof has been in existence at all times since December 31, 1950. It is clear that the petitioner does not come within the explicit terms of section 1402(e) or (h). She cannot qualify under section 1402(e) because, according to her own testimony, she is not an ordained, commissioned, or licensed minister of her religion, and because she has not filed an application for such exemption. She cannot qualify under section 1402(h) because she does not meet the conditions set forth therein and because she has not filed an application for such exemption in the manner prescribed by the Commissioner. She admits that her religion does not have a tenet proscribing participation in a public retirement system, but she argues that her personal consciencious objection to social security is an adequate substitute. However, even if we accepted her position in that regard, there are other conditions of section 1402(h) which have not been satisfied. The Secretary of Health, Education, and Welfare has not made the requisite finding, *470 and there has been no showing that the Quakers or Friends make adequate provision for the retirement of their members. In addition, we cannot expand the exemptions to include the petitioner. Congress exercised its legislative judgment when it established the guidelines for the exemptions, and in the absence of a showing that Congress acted arbitrarily in drawing such lines, we as a court cannot depart from them. Henson v. Commissioner,supra;Palmer v. Commissioner,supra. The petitioner's failure to meet the requirements are not mere technicalities; she has failed to show she comes within the legislative purpose for granting the exemptions. Accordingly, we hold that the petitioner has failed to demonstrate that she is exempt from the self-employment income tax. To give effect to the concession by the Commissioner, Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue.↩